1  VORYS, SATER, SEYMOUR AND PEASE LLP
   Cory D. Catignani (SBN 332551)
2  cdcatignani@vorys.com
   4675 MacArthur Court, Suite 700
3  Newport Beach, CA 92660
   Telephone:   (949) 526-7904
4  Facsimile:    (949) 526-7904

5  Attorneys for Defendant
   ADVANCED DRAINAGE SYSTEMS, INC.
6

7

8              UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 ARNULFO LOPEZ, individually, and        Case No.
   on behalf of all others similarly
12 situated,                               Removed from Santa Clara County
                                           Superior Court; Case No. 24CV448362
13             Plaintiff,
                                           **DEFENDANT'S NOTICE OF**
14      v.                                 **REMOVAL**

15 ADVANCED DRAINAGE SYSTEMS,             **CLASS ACTION COMPLAINT**
   INC., a Delaware corporate; and DOES
16 1 through 10, inclusive,

17             Defendants.                  Action Filed: September 30, 2024
                                            Trial Date: None Set
18                                          Removal Date: November 1, 2024

19

20      TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO

21 PLAINTIFF ARNULFO LOPEZ AND HIS ATTORNEYS OF RECORD:

22      PLEASE TAKE NOTICE that Defendant Advanced Drainage Systems, Inc.

23 ("Defendant") hereby removes the above-captioned action from the Superior Court

24 for the State of California, County of Santa Clara, to the United States District Court

25 for the Northern District of California, pursuant to 28 U.S.C. §§ 1332(d) and 1446.

26      As required by 28 U.S.C. § 1446(d), Defendant will file in the Superior Court

27 and serve upon Plaintiff and his counsel of record a Notice to State Court of Removal

28 of Civil Action to Federal Court (with these removal papers attached).

1    In support of this Notice of Removal, Defendant states the following:

2    ## PROCEDURAL HISTORY

3    1.    Plaintiff Arnulfo Lopez ("Plaintiff") filed his Complaint, captioned

4    *ARNULFO LOPEZ, individually, and on behalf of all others similarly situated v.*

5    *ADVANCED DRAINAGE SYSTEMS, INC., a Delaware Corporation; and DOES 1*

6    *through 10, inclusive*, Case No. 24CV448362, in the Superior Court for the State of

7    California for the County of Santa Clara (the "State Court Action") on September

8    30, 2024.  A true and correct copy of the Complaint, including the Proof of Service,

9    is attached as **Exhibit 1** ("Complaint").

10    2.    The Complaint, Summons, Civil Case Cover Sheet, and Civil Lawsuit

11    Notice were served on Defendants on October 3, 2024.  *See* **Exhibit 1.**

12    3.    The allegations in the Complaint are substantially similar to the claims

13    alleged in a previously filed lawsuit captioned *Joey Garcia v. Advanced Drainage*

14    *Systems, Inc.*, Case No. 1:24-CV-00616-SAB, pending in the U.S. District Court for

15    the Eastern District of California ("Garcia Action").  The Garcia Action was filed

16    on March 25, 2024.

17    4.    Defendant filed an Answer to Plaintiff's Complaint in the State Court

18    Action on October 30, 2024.  A true and correct copy of the Answer is attached as

19    **Exhibit 2**.

20    ## STATEMENT OF JURISDICTION

21    5.    This Court has original jurisdiction over this action under the Class

22    Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1332(d).  In relevant part,

23    CAFA grants district courts original jurisdiction over civil class actions filed under

24    federal or state law in which any member of a class of 100 or more putative class

25    members is a citizen of a state different from any defendant and the amount in

26    controversy for the putative class members in the aggregate exceeds $5,000,000,

27    exclusive of interest and costs.  CAFA authorizes removal of such actions pursuant

28    to 28 U.S.C. § 1446.  As set forth below, this case meets all of CAFA's requirements

for removal and is timely and properly removed by the filing of this Notice of Removal.

6.      The Act applies to actions that were "commenced" on or after February 18, 2005.  Because Plaintiff filed the State Court Action on September 30, 2024, it was "commenced" on or after February 18, 2005, and removal is proper under CAFA.

## TIMELINESS OF REMOVAL

7.      Pursuant to 28 U.S.C. § 1446(b), Defendant filed this removal within 30 days after receipt of service of the Complaint and Summons on October 3, 2024. *See* **Exhibit 1.**

## DIVISIONAL ASSIGNMENT

8.      Plaintiff originally filed this action in the Superior Court for the State of California, County of Santa Clara.  This action is properly removed to this judicial district and division, pursuant to 28 U.S.C. § 1441(a) and Local Rule 3-2(c) and (e), because it encompasses the county in which this action is pending.  However, Defendant denies that the Northern District of California is the appropriate venue for this action and submits that this action should be transferred to the Eastern District of California where the first-filed Garcia Action is pending.

## PROCEDURAL REQUIREMENTS

9.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached to this Notice of Removal as **Exhibits 1 and 2**.[1]  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Santa Clara.

10.      Advanced Drainage Systems, Inc. is the only named Defendant and

---

[1] In conformity with the requirement of 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant in the State Court Action, including the Complaint, Summons, and Answer are attached.

therefore no other consent for Removal is required.

### DEFENSES

11.    The removal of this action to the Northern District of California does not waive Defendant's abilities to assert any defense to this action, including the right to move to dismiss this action pursuant to Rule 12 of the Federal Rules of Civil Procedure, move to stay this action, or a motion to transfer venue pursuant to 28 U.S.C. § 1404.

### REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

#### A.    Plaintiff's Action is Pled as a Class Action

12.    Under CAFA, "'class action' means any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

13.    The State Court Action has been styled as a class action, pursuant to California Code of Civil Procedure Section 382. *See* Complaint at Caption and ¶ 23. Cal. Civ. Proc. Code § 382 authorizes an action to be brought by one or more representative persons as a class action. *See* Cal. Civ. Proc. Code § 382.

#### B.    The Proposed Class Contains at Least 100 Members

14.    Pursuant to 28 U.S.C. § 1332(d)(5)(B), district courts will have original jurisdiction over a class action case under CAFA if the number of members of the putative plaintiff class is not less than 100.

15.    This requirement is met here. Plaintiff's Complaint proposes a class of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint ¶ 25.

16.    Defendant's records show that the size of the potential class meets CAFA requirements. Using data gathered for the first-filed Garcia Action, which

covered the period from March 25, 2020, through May 8,2024, Defendant employed a total of 377 nonexempt employees in California.  *See* Paragraph 5(a) to the Declaration of Amy Elliott ("Elliott Decl.") attached as **Exhibit 3**.  Thus, Plaintiff's Complaint and Defendant's records establish that the number of potential class members exceeds the minimal threshold.

### C.    There is Diversity Between at Least One Putative Class Member and One Defendant

17.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).  Minimal diversity of citizenship exists here between Plaintiff and Defendant.

18.    Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 750–51 (9th Cir. 1986*); see also State Farm Mut.  Auto.  Ins. v. Dyer*, 19 F.3d 514, 519–20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 U.S.  Dist.  LEXIS 21162, at *22 (E.D.  Cal. Mar. 18, 2008) (place of residence provides "prima facie" case of domicile).

19.    Upon information and belief, Plaintiff is, and at the time of the commencement of this action was, a resident of the State of California.  Complaint ¶ 7.  For diversity purposes, a person's citizenship is determined by the state in which he is domiciled. *See Lew*, 797 F.2d at 749–50. "A person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Id.*  Plaintiff's Complaint establishes that he has a fixed habitation in California.  Because Plaintiff is domiciled in California, Plaintiff is a citizen of California. *See Ehrman v. Cox Communs.*, 932

F.3d 1223, 1228 (9th Cir. 2019) ("Accepting the truth of [Defendant] Cox's allegations, [Plaintiff] Ehrman 'is a citizen of California.'").

20.     A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is its "nerve center," where its senior officers "direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

21.     Defendant is a corporation incorporated under the laws of the State of Delaware.  *See* Declaration of Kevin Tally ("Tally Decl."), attached as **Exhibit 4**, at ¶ 2.  Its corporate headquarters are located in Hilliard, Ohio.  *Id.*  Its senior corporate officers are located in Hilliard, Ohio.  *Id.*  Defendant is neither incorporated in California, nor does it have a principal place of business in California.  *Id.*

22.     Because Plaintiff is a citizen of California, and Defendant is a citizen of Delaware and Ohio, minimal diversity exists for federal jurisdiction under CAFA. *See* 28 U.S.C. §§ 1332(d)(2)(A).

23.     The presence of Doe Defendants in this case has no bearing on diversity with respect to removal.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690–91 (9th Cir. 1998); *see also* 28 U.S.C. § 1441(b) ("[f]or the purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded").

**D.     The Amount in Controversy Exceeds $5,000,000[2]**

24.     This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in

---

[2] Defendant provides the following calculations only to demonstrate that the amount in controversy exceeds $5,000,000.  Defendant makes no admission of liability or damages with respect to any aspect of this case nor does Defendant waive the right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail on any of his claims.

DEFENDANTS' NOTICE OF REMOVAL

controversy for all class members exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

25.    The removal statute requires that a defendant seeking to remove a case to federal court file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).    Importantly, "'no antiremoval presumption attends cases invoking CAFA,' in part because the statute was enacted 'to facilitate adjudication of certain class actions in federal court.'"    *Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 898, 9930994 (9th Cir. 2022), quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014).    Rather, "CAFA's provisions should be read ***broadly***, with a ***strong preference*** that interstate class actions should be heard in federal court if properly removed by any defendant." *Id.* at 993 (emphasis added).

26.    Plaintiff's Complaint does not specify the amount in controversy. Plaintiff's failure to specify does not deprive this Court of jurisdiction.    Rather, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *See Rodriguez v. AT&T Mobility Servs.*, 728 F.3d 975, 977 (9th Cir. 2013) ("[T]he proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.").

27.    This burden is not onerous and does not obligate a removing defendant to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008).    Rather, "[t]he 'ultimate inquiry' is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).    In determining the amount in controversy under CAFA, all potential damages based on the claims in the complaint, as well as attorneys' fees, are included. *See Campbell v. Vitran Express, Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (in measuring the amount in

controversy, a court "must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint") (quotations and citations omitted).

28.    The United States Supreme Court has held that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  Supporting evidence is required only if and when the plaintiff contests or the court questions the allegations of the notice of removal. *See id.*  Otherwise, "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 87.

29.    In establishing the amount in controversy, a removing party is entitled to make reasonable assumptions. *Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1199 (9th Cir. 2015); *see also Oda v. Gucci Am., Inc.*, No. 2:14-cv-7468-SVW (JPRx) and 2:14-cv-07469-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *10 (C.D. Cal. Jan. 7, 2015) ("Where, as here, a plaintiff makes generalized allegations regarding the frequency of violations, a defendant may calculate the amount in controversy based on reasonable assumptions.").

30.    Moreover, Congress intended that any uncertainty of the removability of an interstate class action be resolved in favor of federal jurisdiction. *See* S. REP. No. 109-14, pt. VI, at 42 (2005) ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case.").

31.    In sum, Defendant denies the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them.  Nevertheless, and notwithstanding Plaintiff's failure to allege the total amount of damages claimed, the amount in

controversy as alleged by Plaintiff in this case exceeds $5,000,000.

### 1. **Failure to Pay Overtime Wages**

32. Plaintiff's second cause of action is for the alleged failure to pay overtime compensation pursuant to California Labor Code Sections 510, 1194 and 1198. Complaint ¶¶ 42-50. Plaintiff asserts this on behalf of himself and the Class. *Id.* at ¶ 2.

33. Each non-exempt employee is entitled to be paid one and one–half times his regular rate of pay for time worked in excess of eight (8) hours per workday and/or more than forty (40) hours per workweek. Cal. Lab. Code § 510.

34. For his unpaid overtime claim, Plaintiff alleges that "Defendants failed to pay Plaintiff and some of, but not necessarily all of, the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code §§ 510 and 1198." Complaint at ¶ 46.

35. Courts have routinely held that an assumption of one hour of unpaid overtime per week is reasonable. *Danielson v. Blood Ctrs. of the Pac.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *21 (N.D. Cal. Dec. 30, 2019) ("Courts in this circuit have held that an hour of unpaid overtime per week is a reasonable estimate when the complaint alleges a pattern and practice of failing to pay overtime wages.") (internal quotations omitted) (citing *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) and *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *7 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.")).

36. Even where, as here, Plaintiff uses ambiguous limiting language, courts

still hold that one hour of unpaid overtime per week is a reasonable assumption. *See, e.g., DeMaria v. Nig Lots Stores – PNS, LLC,* No. 2:23-cv-00296-DJC-CKD, 2023 U.S. Dist. LEXIS 176567, *14-17 (E.D. Cal. Sep. 29, 2023) (holding that one hour of unpaid minimum wage per week was a reasonable assumption despite plaintiff's allegations that violations occurred "at times" and only involved "some of" the potential class members).

37.    The average hourly rate of potential class members during the proposed class period is $24.68/hour.  *See* Elliott Decl. at ¶ 5(b).  The overtime rate based on this average hourly rate would therefore be $37.02 (1.5 x $24.68).

38.    The average shift worked by potential class members during the proposed class period is 8.89 hours.  *See* Elliott Decl. at ¶ 5(d).  Thus, any work performed off the clock would be paid at the overtime rate because the potential class members worked more than eight hours per shift on average.

39.    During the proposed class period, the proposed class members worked a total of 32,870 workweeks.  *Id.* at ¶ 5(c).

40.    Because courts routinely approve one hour of unpaid overtime per workweek, Defendants will conservatively assume one hour of unpaid overtime wages for each of the 32,870 weeks worked by potential class members during the proposed class period.

41.    Multiplying the hours of unpaid overtime by the average hourly overtime rate for the putative class, this cause of action puts **$1,213,515.60** in controversy (32,780 x $37.02).

## 2.    <u>Failure to Pay All Wages and Minimum Wages</u>

42.    Plaintiff's first cause of action is for the alleged failure to pay minimum wages and straight time wages for all hours worked.  Complaint ¶¶ 33-41.  Plaintiff alleges that Defendant "at times, knowingly failed to pay to Plaintiff and some of, but not necessarily all of, the Class compensation for all hours they worked.  By their failure to pay compensation for each hour worked as alleged above, Defendants

willfully violated the provisions of California Labor Code § 1194, and any additional applicable Wage Orders, which require such compensation to non-exempt employees." *Id.* at ¶ 34. Plaintiff alleges this claim on behalf of himself and the Class. *Id.* at ¶ 2. Plaintiff further alleges that he and the putative class members are entitled to liquidated damages. *Id.* ¶ 39.

43.    The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. Cal. Lab. Code § 1197.

44.    Labor Code Section 1182.12 establishes minimum wages for all hours worked. The minimum wages established by Section 1182.12 during the Relevant Period were:

a.    From January 1, 2020, to December 31, 2020, inclusive,—thirteen dollars ($13) per hour.

b.    From January 1, 2021, to December 31, 2021, inclusive,—fourteen dollars ($14) per hour.

c.    From January 1, 2022, and until adjusted by subdivision (c)—fifteen dollars ($15) per hour.

Cal. Lab. Code § 1182.12(b)(1)(D)–(F).

45.    Any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit. Cal. Lab. Code § 1194(a).

46.    In any action under Labor Code Sections 98, 1193.6, 1194, or 1197.1, to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest

thereon.  Cal. Lab. Code § 1194.2(a).

47.     As discussed above, courts have routinely held that an assumption of one hour of unpaid minimum wages per week is reasonable.  *DeMaria,* 2023 U.S. Dist. LEXIS 176567, *14-17; *Cabrera v. S. Valley Almond Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *24 (E.D. Cal. Dec. 16, 2021) (finding defendant reasonably assumed one hour of unpaid work per week because the complaint alleged that the "violations occurred 'at times' and 'on occasion,'" and were "due to 'policies and/or practices'"); *Rapisura v. BMW of N. Am.*, No. 2:22-cv-00455 WBS AC, 2022 U.S. Dist. LEXIS 88600, at *6 (E.D. Cal. May 17, 2022) (finding the defendant's assumption that all putative class members were not paid minimum wages for two hours per pay period (one hour per workweek) reasonable where the plaintiff made no distinctions between members of the putative class and alleges there were "uniform payroll policies and practices" that led to unpaid minimum wages").

48.     The lowest California minimum wage during the Relevant Period was $13.00/hour.  Cal. Lab. Code § 1182.12(b)(1)(D)–(F).

49.     During the Relevant Period, the number of weeks worked by Class Members was 32,870.  *See* Elliott Decl. at ¶ 5(c).

50.     Defendants conservatively assume one (1) hour of unpaid minimum wages for each of the 32,870 weeks worked by potential class members during the proposed class period.

51.     When multiplying the assumed 32,870 hours of unpaid minimum wages by $13.00/hour, the lowest California minimum wage rate during the Relevant Period, the total is $427,310.00 (32,870 x $13.00).

52.     The Complaint also seeks liquidated (double) damages, which puts the total amount in controversy under Plaintiff's unpaid minimum wage claim at **$854,620.00** ($427,310.00 x 2).

### 3.      <u>Failure to Provide Meal Periods and Rest Periods</u>

53.    In the third and fourth causes of action, Plaintiff alleges that he and others were not provided legally compliant meal periods.  Complaint ¶¶ 52-54, 57-58.

54.    Pursuant to California Labor Code Section 512, no employer shall employ an employee for a work period of more than five (5) hours without providing a meal break of not less than thirty (30) minutes in which the employee is relieved of all of his or her duties, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.  Additionally, if an employee works more than 10 hours per shift, the employer must provide the employee a second meal period of not less than 30 minutes.  Cal Labor Code § 512(a).

55.    California Labor Code Section 226.7(b) establishes that an employee who does not receive a meal period to which he is entitled shall be paid one hour of pay at his regular rate of compensation as premium pay.  *See* Cal. Lab. Code § 226.7(b

56.    In support of his meal break claim, Plaintiff alleges that Defendant "at times failed to provide Plaintiff and some of, but not necessarily all of the Class with both meal periods as required by California law.  By their failure to permit and authorize Plaintiff and some of, but not necessarily all of the Class to take all meal periods as alleged above (or due to the fact that Defendants, at times, made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders."  Complaint ¶ 53.

57.    In support of his rest break claim, Plaintiff alleges that Defendant "at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks, regardless of whether employees worked more than four hours in a workday.  By their failure to permit and authorize Plaintiff and some of, but not necessarily all of the Class to take rest periods as alleged above (or due to the fact

that Defendants, at times, made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders." Complaint ¶ 57.

58.    Courts regularly find that violation rates of 20% are reasonable even where, as here, Plaintiff alleges that the violations occurred "at times." *See, Ross*, 2024 U.S. Dist. LEXIS 161599, *9-10 (approving as reasonable assumed violation rates up to 20% where plaintiff alleged violations occurred "at times"); *DeMaria*, 2023 U.S. Dist. LEXIS 176567, *14-17 (approving violation rate of 40% despite "at times" limiting language in complaint); *see also, Cavada v. Inter-Continental Hotels Grp.*, No. 19cv1675-GPC(BLM), 2019 U.S. Dist. LEXIS 190302, at *18–19 (S.D. Cal. Nov. 1, 2019) (internal citations omitted); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020); *Olson v. Becton, Dickinson, and Co.*, Case No. 19cv865-MMA(BGS), 2019 U.S. Dist. LEXIS 165789, at *4 (S.D. Cal. Sept. 25, 2019) (assuming 25% violation rate, five violations per pay period for meal and rest period violations, reasonable based on allegations of a "pattern and practice"); *Bryant v. NCR Corp.,* 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for the meal period claim or three of five violations per workweek, and a 30% violation rate or three of ten rest periods per workweek, where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations); *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 2:18-CV-03054-ODW (ASx), 2018 U.S. Dist. LEXIS 102519, at *3 (C.D. Cal. June 19, 2018) (finding a 50% violation rate reasonable where plaintiff alleged that defendant forced class members to "often forego a meal period and/or work during their meal period"); *Elizarraz v. United Rentals, Inc.*, Case No. 18cv9533-ODW(JC), 2019 U.S. Dist. LEXIS 62065, at *3–4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate, or 2.5 out of 5 missed meal periods per week, and a 25% violation rate, or 2.5 out of 10 missed rest period per week, reasonable where the complaint alleged a "pattern and practice" of meal and rest period violations); *Oda v. Gucci Am., Inc.,*

Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-07469-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely); *Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175, 1189 (E.D. Cal. 2020) (finding "a violation rate of 40%—a median between 25% and 60%—to be reasonable"); *Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 U.S. Dist. LEXIS 122765, at *4–5 (E.D. Cal. June 30, 2021) (finding a 60% violation rate is reasonable, but applying a 40% violation rate—a median between 20% and 60%--to meet the $5 million threshold under CAFA); *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012) (holding allegations that the defendant "regularly and consistently failed to provide uninterrupted meal and rest periods" supported the assumption of two missed breaks per week).

59.   Defendant accounts for Plaintiff's allegations that the violations occurred "at times" by conservatively assuming a violation rate of 20% for both Plaintiff's meal and rest period claims, which falls well within the range California courts have determined to be reasonable.

60.   Defendants used the average hourly rate of all Class Members during the Relevant Period to calculate the amount these claims place into controversy. *See Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. LEXIS 55667, at *11 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of an average hourly wage was proper for determining the amount in controversy."); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1150 (C.D. Cal. 2010) ("[I]t is preferable for defendants to calculate the average hourly wage based on the average wage of all class members.") (internal citation and quotation marks omitted).

61.   As specified above, the average hourly rate of all proposed class members during the proposed class period is $24.68/hour. *See* Elliott Decl. at ¶ 5(b).

During the proposed class period, the number of weeks worked by proposed class members was 32,870. *Id.* at ¶ 5(c). For purposes of calculating the amount in controversy, Defendant assumes a violation rate of 20% for both Plaintiff's meal period and rest period claims, or one (1) meal period violation per proposed class member per workweek and one (1) rest break violation per proposed class member per workweek.

62. Thus, the meal-period claim (third cause of action) places **$811,231.60** in controversy ($24.68 avg. wage x 32,870 weeks worked x 1 violation per week), and the rest break claim (fourth cause of action) places **$811,231.60** in controversy ($24.68 avg. wage x 32,870 weeks worked x 1 violation per week).

63. In total, Plaintiff's third and fourth causes of action place **$1,622,463.20** ($811,231.60 + $811,231.60) in controversy.

### 4. Waiting Time Penalties

64. Plaintiff's fifth cause of action is a derivative claim for waiting time penalties for the failure to timely pay wages earned and unpaid prior to termination, pursuant to California Labor Code Sections 201, 202, and 203. Complaint ¶¶ 60-65.

65. California Labor Code Sections 201 and 202 provide that an employer pay employees all wages due within seventy-two (72) hours of separation of employment. Section 203 of the Code provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation of wages. The statute of limitations on a claim for waiting time penalties is three years. *See Pineda v. Bank of America, N.A.* (Cal. 2010) 50 Cal. 4th 1398.

66. If the allegations of the Complaint and Plaintiff's legal theories are correct, any putative class member whose employment terminated more than 30 days prior to this notice of removal is entitled to 30 days' continuation wages as a penalty under Labor Code Section 203, and any putative class member whose employment

terminated within the last 30 days is entitled to continuation wages from the date of termination through present.

67.    As discussed throughout, Plaintiff alleges that Defendant failed to pay overtime wages, failed to pay for all hours worked, and failed to provide meal periods, among other violations.  Given the extent of these claims and the absence of language limiting these claims to a smaller subset of employees, it is reasonable to infer "that each class member suffered some form of Labor Code violation at some point during his or her employment, and thus was entitled to waiting time penalties." *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 U.S. Dist. LEXIS 86975, at \*35 (C.D. Cal. June 22, 2012) (analyzing amount of controversy under the now defunct legal certainty standard); *see e.g.*, *Cavada v. Inter-Continental Hotels Grp.*, No. 19cv1675-GPC(BLM), 2019 U.S. Dist. LEXIS 190302, at \*25 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate . . . is based on a reasonable assumption"); *Marquez v. Southwire Co.*, No. EDCV 21-252 JGB (SPx), 2021 U.S. Dist. LEXIS 97011, at \*17–18 (C.D. Cal. May 21,  2021).

68.    For purposes of this calculation, Defendant reasonably assumed a 100% violation rate.  This assumption is logical because recovery of waiting time penalties does not hinge on the number of violations committed.  Defendant "need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply."  *Noriesta v. Konica Minolta Bus. Solutions U.S.A.*, No. ED CV 19-0839-DOC (SPx), 2019 U.S. Dist. LEXIS 227644, at \*19 (C.D. Cal. June 21, 2019); *see also* Cal. Lab. Code § 203(b).

69.    Moreover, courts have routinely held that a 100% violation rate using the full 30-day period is appropriate.  *See, e.g.*, *Altamirano v. Shaw Indus.*, No. C-13-0939 EMC, 2013 U.S. Dist. LEXIS 84236, at \*34 (N.D. Cal. June 14, 2013) ("[A]warding penalties for the entire 30 pay [*sic*] period is reasonable.");

*Rahmatullah v. Charter Communs.*, No. EDCV 20-354 PSG (SPx), 2020 U.S. Dist. LEXIS 127235, at *12 (C.D. Cal. July 15, 2020) ("The thirty-day maximum is supported by Plaintiff's complaint because Plaintiff seeks the maximum penalty, and Plaintiff's complaint contains broad and general allegations and does not contain limiting language.").

70.    An employer may establish the amount in controversy for a waiting time penalty pursuant to California Labor Code Section 203 by: (1) assessing an average hourly rate based on the regular rate applicable to the putative class; (2) multiplying the average hourly rate by the number of average hours worked per shift; (3) multiplying that number by the number of days in the waiting time period; and (4) multiplying that number by the number of putative class members. *Carranza v. Nordstrom*, No. EDCV 14-01699 MMM (DTBx), 2014 U.S. Dist. LEXIS 172307, *45 (C.D. Cal. Dec. 12, 2014).

71.    As specified above, the average hourly rate of all putative class members is $24.68/hour.  *See* Elliott Decl. at ¶ 5(b).

72.    The average shift length for putative class members was 8.89 hours. *See Id.* at ¶ 5(d).

73.    Plaintiff alleges that Defendant willfully failed to pay terminated putative class members their earned and unpaid wages at the time of discharge or within 72 hours of their separation.  Complaint ¶ 18, 62.

74.    There are approximately 377 potential class members (all persons who are or were employed by Defendant as hourly paid, non-exempt employees in the State of California).  *See* Elliott Decl. at ¶ 5(a).  Of the 377 potential class members, 199 are former employees.  *Id.*

75.    Based on the foregoing, Plaintiff's fifth cause of action places **$1,309,849.04** ($24.68/hr. x 8.89 avg. shift length x 30 day x 199 former employees)

1   in controversy.

2          **5.     Attorneys' Fees**

3          76.    Plaintiff seeks to recover attorneys' fees.  Complaint at "Prayer for

4   Relief" subparagraphs 9, 14, 19, 24, 29, 35, 39, 45.  Under CAFA, attorneys' fees

5   are included in determining the amount in controversy, regardless of whether they

6   are mandatory or discretionary.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–

7   56 (9th Cir. 1998); *see also Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794

8   (9th Cir. 2018) (holding a court must include future attorneys' fees recoverable by

9   statute or contract when assessing whether the amount-in-controversy requirement

10  is met); *Dawsey v. Travelers Indem. Co.*, No. 3:15-cv-05188-RBL, 2015 U.S. Dist.

11  LEXIS 93051, at \*2–3, 7 (W.D. Wash. July 16, 2015) (calculating both statutory and

12  "reasonable" attorneys' fees to determine the amount in controversy under CAFA).

13  For class action settlements, the Ninth Circuit has found that 25% of the common

14  fund is a reasonable attorneys' fees award.  *See id.* at \*7 (citing *Hanlon v. Chrysler

15  Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("benchmark" level for reasonable

16  attorneys' fees in class actions in the Ninth Circuit is 25%)).

17         77.    Therefore, "[i]f Defendant can establish by a preponderance of the

18  evidence that the [amount in controversy is] at least $4 million dollars, the addition

19  of twenty-five percent in attorneys' fees would necessarily meet the $5 million

20  amount in controversy requirement under CAFA."  *Garcia v. Wal-Mart Stores*, No.

21  16-01645-BRO (RAO), 2016 U.S. Dist. LEXIS 142807, at \*18 (C.D. Cal. Oct. 14,

22  2016) (citing *Garibay v. Archstone Communities*, 539 Fed. App'x 763, 764 (9th Cir.

23  2013)).

24         78.    Here, as set forth above, there is "substantial, plausible evidence" that

25  the amount in controversy in Plaintiff's first, second, third, and seventh causes of

26  action in the Complaint totals **$5,000,447.84**.  A reasonable estimate of Plaintiff's

27  attorneys' fees is **$1,250,111.96,** which is 25% of the total amount in controversy

28  for these claims.  Indeed, in another recent matter, the same firm representing

19

Plaintiff requested and received attorneys' fees equal to 33% of the class settlement amount. *See, Suarez v. Bank of America, N.A.,* No. 18-cv-01202-LB 2024 U.S. Dist. LEXIS 6314 (N.D. Cal. Jan. 11, 2024).  Thus, a conservative calculation of the amount in controversy, based on the allegations in Plaintiff's Complaint addressed herein and the data cited herein, is **$6,250,559.80**.  Although this amount does not include Plaintiff's claims for failure to indemnify employees for expenditures, wage statement violations, and failure to produce requested employment records, it exceeds the $5,000,000.00 threshold required by CAFA.  *See* 28 U.S.C. § 1332(d).

79.    Although Defendant specifically denies Plaintiff's claims and denies Plaintiff is entitled to recover any of the relief she seeks, it is clear from the allegations in the Complaint and the scope of the relief sought that the amount in controversy exceeds the $5,000,000.00 jurisdictional threshold of 28 U.S.C. § 1332(d).

### 6.    <u>Plaintiff's Refusal to Stipulate to the Amount in Controversy</u>

80.    Plaintiff's Complaint contains so-called limiting language that the firm representing Plaintiff routinely relies on to challenge CAFA jurisdiction.   For example, in an effort to cast doubt as to the reasonableness of regularly accepted assumptions, Plaintiff alleges that the violations occurred "at times."  *See, e.g.,* Complaint ¶¶ 4, 14-19. Further, despite defining the putative class as **<u>all nonexempt employees</u>** (*see* Complaint ¶ 25), Plaintiff alternatively alleges that "some, but not necessarily all of the Class" experienced the alleged Labor Code violations. *See, Id.* at ¶¶ 20, 34, 45, 53.  However, Plaintiff does not limit his allegations to a subset of the larger putative class.  To the contrary, in an effort to support the appropriateness of class treatment, Plaintiff alleges that "Plaintiff's claims (or defenses, if any) are typical of **<u>all</u>** Class Members' claims as demonstrated herein."  Complaint ¶ 28(b). As a result, Plaintiff's language does not allow Plaintiff to evade removal to federal court. *See Ross v. Tata Consultancy Services,* No. CV 24-0798 FMO (SSCx), 2024

U.S. Dist. LEXIS 161599 (Sept. 9, 2024)

81.    Moreover, if Plaintiff does not believe that the amount in controversy exceeds the threshold, Plaintiff can specifically limit the amount he is seeking to recover in his Complaint. "Plaintiff is master of his claims, and if he wanted to avoid removal, he could have alleged facts specific to his claims which would narrow the scope of the putative class or the damages sought." *Marcy v. J.R. Simplot Co*., No. 2:22-cv-00523-TLN-CKD, 2022 U.S. Dist. LEXIS 52938, *7-8 (E.D. Cal. Mar. 28, 2023). Plaintiff has not alleged specific facts narrowing damages. Indeed, Plaintiff's counsel refuses to stipulate that the amount in controversy does not exceed the threshold. *See* Exhibit A to the Declaration of Cory D. Catignani ("Catignani Decl."), attached as **Exhibit 5**. Plaintiff's refusal to stipulate is evidence that it is more likely than not that Defendant's calculations above are reasonable and the amount in controversy exceeds the jurisdictional threshold. *See, Tavis v. Costco Wholesale Corp.*, No. 8:23-cv-01967-JVS-DFM, 2024 U.S. Dist. LEXIS 183434, *7 (C.D. Cal. Apr. 30, 2024) (plaintiff's "refusal to stipulate that the amount in controversy does not exceed $75,000 lends further support for the conclusion that it is more likely than not that the amount in controversy does exceed the jurisdictional threshold.").

## <u>REMOVAL UNDER TRADITIONAL DIVERSITY</u>

82.    Alternatively, removal is appropriate under 28 U.S.C. § 1332(a). This provision vests the district court with jurisdiction over actions in which the amount in controversy exceeds $75,000 and that are between citizens of different states.

83.    In a class action, courts considering diversity removal consider only the claims of the named plaintiff. *Gibson v. Chrysler Corp*., 261 F.3d 927, 940 (9th Cir. 2001). Thus, if Defendant can show that it is a citizen of a different state than Plaintiff and that Plaintiff's individual claims exceed $75,000, removal is proper under 28 U.S.C. § 1332 (a). *See id.* at 941.

84.    Here, Plaintiff's individual claims exceed $75,000. Plaintiff alleges

that he was employed from approximately May 2021 to approximately June 2024. Compl. at ¶ 7. That amounts to approximately 156 weeks of employment (52 weeks per year x 3 years of employment). Plaintiff's hourly rate was $20.77 at the time of his separation.

85. Making the same reasonable assumptions as it did for the CAFA calculation, the amount in controversy for Plaintiff's individual wage claims is **$22,685.78**, exclusive of attorneys' fees.

    a. Plaintiff's unpaid overtime claim places **$4,860.18** at issue ($17.68 hourly rate x 1.5 x 156 workweeks)

    b. The minimum wage for 2021 was $14/hour. Cal. Lab. Code § 1182.12(b)(1)(F). Thus, Plaintiff's minimum wage claim places **$4,056.00** at issue ($15 x 102 x 2 for liquidated damages).

    c. Plaintiff's waiting time penalties claim places **$5,539.36** at issue ($20.77 x 8.89 average shift length x 30 days).

    d. Plaintiff's meal and rest period claim places **$6,480.24** at issue ($20.77 x 2 violations per week (1 meal period violation and 1 rest break violation) x 156 workweeks).

    e. Plaintiff also alleges a claim for inaccurate wage statements. California Labor Code § 226(e) requires an employer to pay fifty dollars ($50.00) for the first pay period where a violation occurred and on hundred dollars ($100.00) for each violation in subsequent pay periods, up to a statutory maximum of $4,000. Claims under Labor Code § 226(e) have a one-year statute of limitation. Cal. Code Civ. Proc. 340(a). Plaintiff filed his Complaint on September 30, 2024. Thus, his wage statement claim accrued on or after September 30, 2023. Thus, there are 36 workweeks at issue (September 30, 2023, through June 7, 2024). ADS pays its employee's bi-weekly. Elliott Decl. at ¶ 5(e). Accordingly, 18 wage

1 statements are at issue.  Where, as here, the Complaint alleges a
2 lengthy list of potential violations, it is reasonable to assume at least
3 one inaccuracy on every wage statement.  *See Mejia v. DHL Express*
4 *(USA), Inc.,* No. 15-890-GHK (JCx), 2015 U.S. Dist. LEXIS 67212,
5 at \*12-14 (C.D. Cal. May 21, 2015).  Thus, Plaintiff's inaccurate
6 wage statement claim places **$1,750** at issue ($50 + ($100 x 17 pay
7 periods)).

8    86.    Plaintiff also seeks attorneys' fees.  Plaintiff's counsel was also counsel
9 of record in a recent wage and hour class action captioned *Suarez v. Bank of America,*
10 *N.A.*, No. 18-cv-01202-LB, 2024 U.S. Dist. LEXIS 6314 (Jan. 11, 2024) ("*Suarez*
11 Action").  In a declaration dated November 20, 2023, submitted in support of a
12 motion for attorneys' fees in the *Suarez* Action, Plaintiff's counsel represented that
13 attorney with the firm charged hourly rates ranging from $400 - $1,500 per hour,
14 and represented that attorneys expended more than 1,842 hours litigating the case.
15 *See* Catignani Decl., Exhibit B, ¶ 39.  The *Suarez* court found the firm's billing rates
16 "normal and customary."  *Suarez,* 2024 U.S. Dist. LEXIS 6314, \*7.  Given the firm's
17 rates in the *Suarez* Action, it is reasonable to assume an hourly rate of at least $600
18 for Plaintiff's counsel.  Similarly, because Plaintiff's counsel indicated they spent a
19 more than 1,800 hours in the *Suarez* Action, it is reasonable to assume that Plaintiff's
20 counsel will expend 200 hours litigating the instant action.  Accordingly, there are
21 potentially **$120,000** in attorneys' fees at issue in this case ($600 hourly rate x 200
22 hours).

23    87.    Based on the foregoing, the amount in controversy for Plaintiff's
24 individual wage claims exceeds $75,000.

25    88.    As set forth above, Plaintiff and Defendant are also from different
26 states.  Plaintiff is a resident of California.  Defendant is a resident of Delaware and
27 Ohio.  Accordingly, complete diversity exists.

28    89.    As Plaintiff and Defendant are citizens of different states and there is

more than $75,000 in controversy, removal is proper under 28 U.S.C. § 1332(a).

## CONCLUSION

90.    Based on the foregoing, Defendant respectfully requests that the Court remove the above-entitled action to federal court.

Dated: November 1, 2024          VORYS SATER SEYMOUR AND PEASE LLP

/s/*Cory D. Catignani*
Cory D. Catignani
Attorneys for Defendant
ADVANCED DRAINAGE SYSTEMS, INC.

DEFENDANTS' NOTICE OF REMOVAL