1
2
3
4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   ARNULFO LOPEZ,                          Case No.  5:24-cv-07582-PCP

8                    Plaintiff,
                                            **ORDER REMANDING CASE TO**
9          v.                               **STATE COURT**

10  ADVANCED DRAINAGE SYSTEMS,              Re: Dkt. Nos. 7, 21
    INC.,
11
                     Defendant.
12

13          Plaintiff Arnulfo Lopez, a former employee of defendant Advanced Drainage Systems,

14  Inc., brings this putative wage and hour class action on behalf of persons employed by Advanced

15  Drainage Systems as hourly or non-exempt employees during the four years before the filing of

16  the complaint. He asserts nine causes of action: (1) failure to pay minimum and straight-time

17  wages in violation of California Labor Code § 1194 and applicable Industrial Welfare

18  Commission (IWC) Wage Orders; (2) failure to pay overtime wages in violation of California

19  Labor Code §§ 510, 1194, 1198, 204, and the applicable Wage Order; (3) failure to provide meal

20  periods in violation of California Labor Code §§ 512, 226.7, and section 11 of the applicable

21  Wage Orders; (4) failure to provide rest periods in violation of California Labor Code §§ 226.7,

22  512, and the applicable Wage Orders; (5) failure to pay wages at termination in violation of

23  California Labor Code §§ 201, 202; (6) failure to issue accurate and itemized wage statements in

24  violation of California Labor Code § 226(a); (7) failure to pay and indemnify employees for

25  expenditures in violation of California Labor Code § 2802; (8) failure to produce employment

26  records in violation of California Labor Code §§ 226, 1198.5; and (9) violation of California's

27  Unfair Competition Law (UCL), Cal. Bus. & Profs. Code § 17200 *et seq.*

28          Lopez filed his complaint in Santa Clara County Superior Court. Advanced Drainage

1  Systems subsequently removed the case to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d),

2  1453. In its notice of removal, Advanced Drainage Systems asserted that removal was proper

3  under CAFA because the case has more than 100 putative class members, the amount in

4  controversy exceeds $5,000,000, and Lopez is a citizen of California while Advanced Drainage

5  Systems is a citizen of Delaware and Ohio. Advanced Drainage Systems also contends that this

6  Court has diversity jurisdiction over Lopez's individual claims pursuant to 28 U.S.C § 1332(a)

7  because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

8       Lopez now moves to remand this case to state court for lack of jurisdiction under CAFA

9  and 28 U.S.C. § 1332(a). Advanced Drainage Systems moves to transfer this case to the Eastern

10  District of California or, alternatively, to stay this action pending resolution of a purportedly

11  related case in that court.

12       For the following reasons, Advanced Drainage Systems has not met its burden of

13  establishing this Court's jurisdiction and the Court remands this action to Santa Clara County

14  Superior Court. The motion to transfer is denied as moot.

15                              **LEGAL STANDARDS**

16       A defendant may remove a case from state court to federal court only if the federal court

17  would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar*

18  *Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have

19  been filed in federal court may be removed to federal court by the defendant."). "If at any time

20  before final judgment it appears that the district court lacks subject matter jurisdiction, the case

21  shall be remanded." 28 U.S.C. § 1447(c).

22  **I.      CAFA**

23       CAFA gives federal courts jurisdiction over class actions where there are at least 100 class

24  members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in

25  controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim*

26  *Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

27       The removing party bears the burden of establishing that CAFA's jurisdictional

28  requirements have been met. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683–685

(9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). The removing party must file a notice of removal containing a short and plain statement of the grounds for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). If the amount in controversy alleged by the defendant is contested by the plaintiff or questioned by the court, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 82, 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Defendants are allowed to make reasonable assumptions when calculating the amount in controversy. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). But "[m]ere speculation and conjecture" are insufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also id.* at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."); *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence."); *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585, 2017 WL 4457228, at *2 (E.D. Cal. Oct. 6, 2017) ("When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable, and not constitute mere speculation and conjecture."). Assumptions can, however, "be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Company*, No. 25-68, 2025 WL 811096, at

3

1    *3 (9th Cir. Mar. 14, 2025) (cleaned up).

2    **II.    Diversity jurisdiction**

3        Pursuant to 28 U.S.C. § 1332(a), federal district courts have jurisdiction over matters

4    where the parties are citizens of different states and the amount in controversy exceeds $75,000. A

5    corporation is a citizen of both the state in which it is incorporated and the state in which it has its

6    principal place of business—the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77,

7    81 (2010). There is a strong presumption against removal to federal court under diversity

8    jurisdiction, and the removal statute is strictly construed against finding federal jurisdiction.

9    *California v. AbbVie Inc.*, 390 F. Supp. 3d 1176, 1180 (N.D. Cal. 2019). The defendant seeking

10   removal bears the burden of overcoming this presumption, and any doubt about removal weighs in

11   favor of remand. *Id.*

12                                        **ANALYSIS**

13   **I.    Advanced Drainage Systems has not shown by a preponderance of the evidence that
14          this Court has jurisdiction under CAFA.**

15       To determine if removal was proper, the Court must assess whether this case meets

16   CAFA's threshold requirements. It is uncontested that two of CAFA's three requirements are met

17   here. Because Lopez is a citizen of California and Advanced Drainage Systems is a citizen of

18   Delaware and Ohio, and the proposed class consists of at least 371 employees, CAFA's "minimal

19   diversity" requirement and class size requirements are met. The parties disagree, however, about

20   whether the amount in controversy exceeds $5,000,000.

21       Lopez's complaint does not specify an amount in controversy. In its notice of removal,

22   Advanced Drainage Systems estimated that the total amount in controversy was $6,250,559.80:

23   $1,213,515.60 for unpaid overtime wages, $854,620.00 for unpaid minimum wages and liquated

24   damages, $811,231.60 for meal break penalties, $811,231.60 for rest break penalties,

25   $1,443,466.63 for waiting time penalties, and attorneys' fees equal to 25% of the amount in

26   controversy on the substantive claims.

27       After plaintiffs noted in their motion to remand that Advanced Drainage Systems'

28   calculations were based on employment data from a period six months longer than the proposed

4

class period, Advanced Drainage Systems submitted revised calculations for the correct period. It now estimates that the total amount in controversy is $6,756,607.61[1]: $1,348,424.34 for unpaid overtime wages, $815,516 for unpaid minimum wages and liquidated damages, $898,949.56 for meal break penalties,[2] $898,949.56 for rest break penalties, $1,443,466.63 for waiting time penalties,[3] and attorneys' fees equal to 25% of the amount in controversy on the substantive claims.

Advanced Drainage Systems fails to meet its burden of establishing by a preponderance of the evidence that CAFA's amount-in-controversy requirement is met because its calculations rely on unreasonable assumptions.

**A.** **Advanced Drainage Systems relies on unreasonable assumptions to calculate unpaid overtime wages, unpaid minimum wages, and liquidated damages.**

Advanced Drainage Systems estimates that the amounts in controversy for plaintiffs' overtime and minimum wage claims are $1,348,424.34 are $815,516, respectively. To calculate those estimates, Advanced Drainage Systems assumed one hour of unpaid minimum wages per class member per pay period and one hour of unpaid overtime wages per class member per pay period. It contends that these assumptions are reasonable based on the complaint's allegations that Advanced Drainage Systems "failed to pay Plaintiff and some of, but not necessarily all of, the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law" and "failed to pay to Plaintiff and some of, but not necessarily all of, the Class compensation for all hours they worked." Advanced Drainage Systems cites cases in which courts have found the same assumed violation rates reasonable where plaintiffs allege a "pattern and

---

[1] Based on Advanced Drainage Systems' estimates for each of plaintiffs' claims, the Court calculates its estimate of the total amount in controversy as $6,756,632.61, not $6,756,607.61.

[2] In its opposition to the motion to remand, Advanced Drainage Systems alternatively estimates meal break penalties to be $898,949.56 and $989,949.56. The latter estimate appears to be a typo.

[3] As discussed below, Advanced Drainage Systems concedes that it miscalculated waiting time penalties based on a four-year statute of limitations rather than the applicable three-year limitations period. It proposes that the estimated waiting time penalties be reduced by 25%, which makes them $1,082,599.97, and makes its estimate of the total amount in controversy $6,395,740.95.

United States District Court
Northern District of California

United States District Court
Northern District of California

1 practice" or "regular or consistent practice" of overtime and minimum wage violations, and where

2 plaintiffs allege that such violations occurred "at times" involving "some of" the potential class

3 members.

4        While it may be reasonable in certain circumstances to assume one unpaid hour each of

5 minimum wages and overtime wages per class member per pay period based on allegations of a

6 regular but not universal practice of failing to pay employees wages owed, Advanced Drainage

7 Systems' assumptions here are unreasonable because they are duplicative and unjustified. Its

8 calculations assume that potential class members each worked one unpaid hour per week, and that

9 they are owed overtime wages, minimum wages, and liquidated damages for that same hour of

10 work. But each such hour could entitle an employee to wages paid at *either* the overtime *or*

11 minimum wage rate, not both. In its notice of removal, Advanced Drainage Systems justified its

12 assumed overtime violation rate by noting that "[t]he average shift worked by potential class

13 members during the proposed class period is 8.89 hours[4] [and] any work performed off the clock

14 would be paid at the overtime rate because the potential class members worked more than eight

15 hours per shift on average." In its opposition to the motion to remand, however, Advanced

16 Drainage Systems contends that although the average shift length was 8.93 hours, that "does not

17 mean that all shifts exceeded eight hours," and argues that it is reasonable to assume class

18 members "worked off-the-clock during shifts that did and did not qualify for overtime pay."

19        Even if the length of the average shift would justify an assumption that most unpaid class

20 member work should be compensated at the overtime rate, and even if it would also be reasonable

21 to assume that some unpaid class member work should be compensated at the minimum wage

22 rate, Advanced Drainage Systems provides no basis whatsoever for its assumption that each class

23 member worked both an hour of unpaid overtime and an hour of unpaid regular time per week. In

24 the absence of any such justification, its assumption amounts to no more than speculation and

25 conjecture, and is thus unreasonable.

26        Advanced Drainage Systems' failure to provide any reasonable basis for its calculation is

27

28 _____

[4] Advanced Drainage Systems later corrected the average shift length to 8.93 hours.

particularly notable given that it is the party best positioned to determine how many shifts would require compensation at the overtime or minimum wage rate. Presumably, Advance Drainage Systems can readily determine from its own records the actual number of shifts lasting below or above 8 hours during the class period. As the Ninth Circuit recently explained,

> What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number …. By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate … because the defendant likely believes that the real rate is zero and thus that the evidence does not exist.

*Perez v. Rose Hills Company*, 2025 WL 811096, at *3. While Advanced Drainage Systems may make reasonable assumptions about violation rates based on the language of the complaint, it may not rely on unexplained conjecture in lieu of providing an evidentiary basis almost certainly in its possession. Its failure to do so here, along with its failure to provide any other justification for its assumptions derived from the complaint's allegations, renders its assumed violation rate unreasonable.

**B.    Advanced Drainage Systems relies on unreasonable assumptions to calculate the meal and rest period violation rates.**

Advanced Drainage Systems estimates that meal break and rest break penalties are $898,949.56 each. Based on the complaint's allegation that Advanced Drainage Systems "at times failed to Provide Plaintiff and some of, but not necessarily all of the Class with both meal periods" and "at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks," Advanced Drainage Systems assumes one meal period violation and one rest break violation per class member per week. It calculates the amount in controversy on these claims by multiplying the average wage during the class period by the number of weeks worked by class members.

The problem with Advanced Drainage System's calculation is that an employee's entitlement to meal and rest breaks depends on the length of an employee's shift, and Advanced

Drainage Systems' calculations nowhere take shift length into account. Whether it is reasonable to assume one violation per class member per week based on the ambiguous but limiting language in the complaint depends on how many breaks employees were entitled to. Once again, that figure is almost certainly easily determined from employment records in Advanced Drainage Systems' possession. While assumptions and inferences are allowed in calculating the amount in controversy where relevant evidence is not readily available to the party asserting CAFA jurisdiction, if an employer has information in its possession that makes an assumption unnecessary, it is unreasonable for the employer to ignore that information. Given that shift length is essential to evaluating whether estimates for meal and rest break amounts in controversy are reasonable, it "make[s] sense to expect [the] defendant to introduce evidence of that number." *Perez*, 2025 WL 811096, at *3. Once again, Advanced Drainage Systems' failure to support its removal of this case with such evidence, as well as its failure to explain why its assumed violation rate is supported by the allegations of the complaint, renders its assumptions regarding the total amount in controversy on the meal and rest period claims unreasonable.

    **C.**    **Advanced Drainage Systems relies on unreasonable assumptions to calculate waiting time penalties.**

Advanced Drainage Systems initially estimated that waiting time penalties add $1,443,466.63 to the amount in controversy. To calculate waiting time penalties, Advanced Drainage Systems assumed a 100% violation rate based on the extent of plaintiffs' claims and lack of language limiting waiting time violations to a subset of employees. Advanced Drainage Systems therefore multiplied the number of terminated putative class members by the average hourly rate of all putative class members by their average shift length by 30 days, which is the maximum period for which waiting time penalties can be recovered.

Advanced Drainage Systems concedes that it initially miscalculated waiting time penalties because its calculation used the total number of terminated employees for the entire class period, which consists of the four years prior to the filing of the complaint, whereas the statute of limitations for waiting time penalties is only three years. At the hearing on the pending motions, Advanced Drainage Systems proposed that this miscalculation could be remedied by reducing the

8

1    estimated waiting time penalties by 25%, which would reduce its estimate to $1,082,599.97.

2    Doing so, however, would require assuming that the putative class members terminated over the

3    four-year class period were equally distributed across those four years. Once again, the actual

4    number of putative class members terminated in the three years prior to filing the complaint is

5    easily and reliably determined from Advanced Drainage Systems' own records, rendering

6    Advanced Drainage Systems' reliance on entirely unsupported assumptions unreasonable.

7        **D.**    **Advanced Drainage Systems unreasonably relies on the Ninth Circuit's**
8            **benchmark for common fund class actions to calculate attorneys' fees.**

9        In calculating the amount in controversy, Advanced Drainage Systems includes attorneys'

10   fees equal to 25% of the amount in controversy on plaintiffs' substantive claims. It derives that

11   rate from the Ninth Circuit's established 25% benchmark for attorneys' fees awards in class action

12   settlements, where attorneys' fees are paid out of the common fund and calculated as a percentage

13   of the total recovery. *Gurzenski v. Delta Air Lines, Inc.*, No. 221CV05959, 2021 WL 5299240, at

14   *5 (C.D. Cal. Nov. 12, 2021); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

15       The problem with this approach is that any award of attorneys' fees in this case would be

16   made pursuant to California's fee-shifting statutes and paid separately by the defendant, not

17   awarded from a common fund. "[W]hile using the 25% benchmark might make for a straight-

18   forward calculation, it comes from a very different context." *Gurzenski*, 2021 WL 5299240, at *5.

19   "[I]t makes sense to estimate the attorneys' fee for amount-in-controversy purposes *in the same*

20   *manner* that it would be calculated under the fee-shifting statute upon a noticed motion for fees at

21   the close of litigation." *Id.*

22       In California, attorneys' fees recoverable pursuant to a fee-shifting statute are calculated

23   using the lodestar method, in which counsel's lodestar is calculated by multiplying the number of

24   hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.

25   *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). This lodestar may then be increased or reduced

26   by applying a multiplier that depends on several factors, including the nature of the litigation, its

27   difficulty, and the skill required in its handling.

28       As the court explained in *Gurzenski*, "the 25% benchmark from the class action settlement

context is not a suitable proxy for estimating the amount put in controversy by the attorneys' fee claim in [a] fee-shifting case," especially in wage and hour cases like this one, because it may "substantially overestimate the attorneys' fee recoverable under the fee-shifting statutes." 2021 WL 5299240, at *5. Such cases "usually settle for significantly *less* than the entire amount in controversy calculated at the outset of the case based on all claims in issue." *Id.*; *see also Maciel v. M.A.C. Cosms., Inc.*, No. 22-CV-03885, 2022 WL 17340634 (N.D. Cal. Nov. 30, 2022) ("[E]stimating … attorneys' fees by applying the 25% benchmark from the settlement context to the total amount in controversy will usually overstate the fee award plausibly recoverable pursuant to a fee-shifting statute[.]"). Further, "the 25% benchmark … often represents some *multiplier* of the lodestar, so the 25% benchmark cannot be considered a reasonable proxy for the lodestar for purposes of estimating the amount in controversy." *Gurzenski*, 2021 WL 5299240, at *5.[5]

In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, a wage and hour class action removed pursuant to CAFA, the Ninth Circuit rejected the argument that attorneys' fees should be estimated at 25% by applying the Ninth Circuit's benchmark for common fund cases. 899 F.3d 785, 796 (9th Cir. 2018). The Court held that because "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; [courts] may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Id.* Just as in *Fritsch*, Advanced Drainage Systems cannot establish the amount in controversy on attorneys' fees here by relying solely on the Ninth Circuit benchmark. *See, e.g.*, *Maciel*, 2022 WL 17340634, at *6–7; *Ramos v. TDB Commc'ns, Inc.*, No. 2-22-CV-00479, 2022 WL 2906509, at *2 (E.D. Cal. July 22, 2022); *Akana v. Estee Lauder Inc.*, No. LA CV-19-00806, 2019 WL 2225231, at *7–8 (C.D. Cal. May 23, 2019); *Loaiza v. Kinkisharyo Int'l,*

---

[5] Notably, applying the 25% benchmark may also *underestimate* the potential fee recovery. One purpose of statutory fee-shifting is to permit low-wage workers to retain counsel and to ensure that their attorneys are fully compensated notwithstanding the limited value of their claims. In cases involving such workers, the amount of attorney time necessary to reach a positive result may be worth far more than 25% of the workers' total recovery (which will necessarily be tied to the low wage rate they were receiving). Indeed, in calculating the amount in controversy on Lopez's *individual* wage-and-hour claims, Advanced Drainage Systems suggests that Lopez may be awarded attorneys' fees in an amount more than five times greater than his underlying recovery.

United States District Court
Northern District of California

1    *LLC*, 2020 WL 5913282, at *13 (C.D. Cal. Oct. 6, 2020); *Martinez v. Pub. Consulting Grp., Inc.*,

2    No. 22-CV-00813, 2022 WL 8176154, at *5, *7–8 (S.D. Cal. Oct. 13, 2022).

3        Advanced Drainage Systems' calculation of the amount of attorneys' fees in controversy

4    here is based on an inapplicable and unreasonable assumption, and it has offered no alternative

5    basis derived from the complaint's allegations for its calculations. Its estimate of that amount is

6    therefore unreasonable.

7        **E.    Summary**

8        When the unreasonable assumptions upon which Advanced Drainage Systems relies in

9    calculating the amount in controversy are eliminated, that amount falls below CAFA's $5,000,000

10   threshold. If attorneys' fees are excluded from the estimate, the amount in controversy is reduced

11   by $1,689,151.90. Even if waiting time penalties are then reduced only by the 25% that Advanced

12   Drainage Systems proposes in order to remedy its acknowledged miscalculation, the total amount

13   in controversy falls below the CAFA threshold. If Advanced Drainage Systems' assumed one

14   unpaid hour of work per class member per week is counted only once, for overtime rather than

15   minimum wage claims, the total amount in controversy is reduced by an additional $815,516.

16   Correcting Advanced Drainage Systems' unreasonable assumptions in its meal and rest break

17   penalties would reduce the amount in controversy even further. Given how far below the

18   $5,000,000 threshold the amount in controversy falls after these changes, the amount would

19   remain inadequate even if some lesser award of attorneys' fees were to be included.

20       Accordingly, Advanced Drainage Systems has failed to establish that the preponderance of

21   the evidence shows that the amount in controversy here satisfies the CAFA threshold. The Court

22   therefore lacks CAFA jurisdiction over this suit.

23   **II.    Advanced Drainage Systems has not shown that this Court has diversity jurisdiction.**

24       Advanced Drainage Systems asserts that this Court has diversity jurisdiction over Lopez's

25   individual claims pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds

26   $75,000. Relying on the same assumptions underlying its CAFA estimates, Advanced Drainage

27   Systems calculates that the amount in controversy for Lopez's individual wage claims is

28   $22,685.78, and that attorneys' fees are approximately $120,000. It calculates attorneys' fees

United States District Court
Northern District of California

11

1    based on an assumed hourly rate of $600, which is derived from plaintiff's counsel's previously

2    approved hourly rates ranging from $400 to $1,500 per hour, *see Suarez v. Bank of America, N.A.*,

3    No. 18-cv-01202, 2024 WL 150721 (N.D. Cal. Jan. 11, 2024), and its assumption that Lopez's

4    counsel will spend 200 hours litigating this case, a number derived from the 1,942 hours plaintiffs'

5    counsel spent litigating *Suarez*.

6          While some of the assumptions underlying Advanced Drainage Systems' calculation of the

7    amount in controversy on Lopez's individual wage claims are unreasonable for the same reasons

8    they were unreasonable for the purpose of determining CAFA jurisdiction, Advanced Drainage

9    Systems' attorneys' fees calculation has additional problems. Advanced Drainage Systems

10   contends that it is reasonable to assume Lopez's counsel will spend approximately one tenth as

11   much time litigating Lopez's individual claims as it spent litigating the class action claims in

12   *Suarez*, arguing that counsel will need to conduct much of the same discovery and depose the

13   same witnesses in this case whether or not it proceeds as an individual or class action. It is not

14   reasonable, however, for Advanced Drainage Systems to estimate the time necessary to litigate

15   Lopez's individual claims based on an unrelated class action that was heavily litigated over five

16   years and involved 16,500 class members. *See Harvey v. Advisors Mortgage Group, LLC*, No. 21-

17   CV-1048, 2021 WL 4521065, *6, n.6 (S.D. Cal. Oct. 4, 2021) ("Common sense dictates that

18   additional class members require additional hours, particularly when it comes to matters such as

19   discovery."). *Suarez* is not sufficiently analogous to this case for it to reasonably form the basis for

20   Advanced Drainage Systems' calculations. Advanced Drainage Systems "makes too many

21   assumptions, at too early a stage of a case, about similarities between cases that otherwise may

22   have nothing but counsel in common." *White v. Torrance*, No. 23-CV-3216, 2023 WL 8127342, at

23   *1 (C.D. Cal. July 7, 2023).

24         Further, Advanced Drainage Systems' assumption that litigating Lopez's individual claims

25   would require much of the same work as litigating the class claims may impermissibly attribute

26   attorneys' fees to Lopez that rightly belong to other class members. *See Kanter v. Warner-Lamber

27   Co.*, 265 F.3d 853, 858 (9th Cir. 2001). As the court explained in *White v. Torrance*, No. 23-CV-

28   3216, 2023 WL 8127342, at *1 (C.D. Cal. July 7, 2023), "Defendant's argument for a large fee

United States District Court
Northern District of California

12

1    figure attributable to the claims of [the named plaintiff] is effectively dependent on treating this

2    action as if it were not a putative class action …. But it *is* a putative class action." Assuming that

3    attorneys' fees for an individual claim are substantially the same as those for a class essentially

4    amounts to "a contention that anytime an employment case, or even a case involving the wage-

5    and-hour subset of that litigation-type, is filed in, or removed to, federal court, so long as the

6    parties are of diverse citizenship, diversity jurisdiction will exist because the action will always

7    present a likelihood of more than $75,000 at stake just in terms of attorneys' fees alone." *Id*. Such

8    a contention is unreasonable.

9            For these reasons, Advanced Drainage Systems' calculation of the amount in controversy

10   on Lopez's individual claims is premised on unreasonable assumptions, and it has offered no other

11   basis in evidence or in the allegations in the complaint for its assumptions. Even assuming that the

12   amount in controversy on Lopez's underlying claims is the amount calculated by Advanced

13   Drainage Systems, and that he would be awarded fees worth two times as much as that amount,

14   the amount in controversy would still fall below $75,000. Accordingly, Advanced Drainage

15   Systems has not established this Court's jurisdiction under 28 U.S.C. § 1332(a).

16                                   **CONCLUSION**

17           Because Advanced Drainage Systems has not shown by a preponderance of the evidence

18   that the amount in controversy exceeds $5,000,000, it has not satisfied its burden of establishing

19   this Court's jurisdiction under CAFA. Nor has it established diversity jurisdiction under 28 U.S.C.

20   § 1332(a). Accordingly, the Court remands this case to the Santa Clara County Superior Court.

21   Advanced Drainage Systems' motion to transfer is denied as moot.

22           **IT IS SO ORDERED.**

23   Dated: April 11, 2025

24

25   _____

26   P. Casey Pitts
     United States District Judge

27

28

United States District Court
Northern District of California